J-S09029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN MILLER | : | |
| | : | |
| Appellant | : | No. 1401 EDA 2019 |

Appeal from the PCRA Order Entered April 23, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0600481-2003

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 17, 2020**

Jonathan Miller appeals, *pro se*, from the order, entered in the Court of
Common Pleas of Philadelphia County, dismissing as untimely his serial
petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A.
§§ 9541-9546.   After our review of the record, the parties' briefs, and the
applicable case law, we agree with the PCRA court's determination that Miller's
petition is untimely and he has failed to allege an exception to the
jurisdictional time bar.  We, therefore, affirm.

This Court has previously set forth the relevant facts of this case as
follows:

> On July 16, 2001, [T.W.], age 15, was at the home of her sister,
> [T.S.], [on West Atlantic Street] in Philadelphia.  [T.W.]'s brother
> and niece were also present, but were asleep.  Between 10 and
> 11 p.m., [T.W.] and her girlfriend were in the living room of the

---

[*] Retired Senior Judge assigned to the Superior Court.

house. According to [T.W.], two men, one of whom was Miller, knocked at the door and asked for "Phyllis." [T.W.] replied that Phyllis did not live there. She instructed the men to go around the corner and "see if she's home where she live[s]." Miller then said, "Well, your house is a whorehouse anyway." [T.W.] replied, "Whatever."

About forty-five minutes later, Miller's companion came back to the house on West Atlantic. At this time, [T.W.]'s sister, [T.S.], was present. The man spoke to [T.S.] and said he wished to apologize for Miller calling her house a whorehouse. [T.W.] and [T.S.] said, "Okay, whatever," and went back into the house.

About twenty minutes later, Miller came back to the house and screamed into the window, "[Y]es, it was me that called your house [a] whorehouse." [T.W.] and [T.S.] went to the door, at which point Miller told them that he did not call their house a whorehouse. [T.W.] told him to stop lying, and then Miller "proceeded to start calling [her] all types of [expletives]." [T.W.] told Miller [to stop,] "or I'm going to spit on you." Miller said, "[I]f you spit on me, I'm going to shoot you." According to [T.W.], she then spit on Miller[,] and "before [she] could even see the gun or anything[, Miller] shot [her]." [T.W.] indicated that she was shot in her left forearm and in the left side of her abdomen. Miller was approximately three and one-half to four feet away from [T.W.] when she was shot.

* * *

The police subsequently investigated the shooting. On October 18, 2001, [T.W.] identified a different man, from a police photo imaging machine, as the man who shot her. The police then placed this photograph in an array and showed it to [T.S.], who was unable to make an identification.

On October 25, 2001, [T.W.] came into the police station and informed the police that she had just seen the shooter on the bus. The police were able to locate the bus and take a suspect into custody. The suspect was also not Miller. The police obtained a photograph of the suspect and included it in a photo array that was shown to [T.S.]. [T.S.] was unable to make an identification.

On March 18, 2003, based on information received by Detective Sekou Kinebrew, the police prepared a photo array that contained

Miller's photograph. Detective Kinebrew met separately with [T.S.] and showed her the photo array, at which time [T.S.] positively identified Miller. Detective Kinebrew subsequently arrested Miller. [T.W.] also identified Miller from a line-up.

Trial Court Opinion, 10/31/08, at 1-4.

On June 22, 2004, a jury found Miller guilty of attempted murder,[1] aggravated assault,[2] and carrying firearms without a license.[3] On December 23, 2004, Miller was sentenced to a term of ten to twenty years' imprisonment for attempted murder, and to a consecutive term of two-and-one-half to five years' imprisonment for carrying firearms without a license; the aggravated assault conviction merged with attempted murder for sentencing purposes. Miller did not file a direct appeal.

Miller filed his first *pro se* PCRA petition on October 14, 2005. The trial court appointed counsel to represent Miller, who filed an amended petition requesting reinstatement of Miller's appellate rights *nunc pro tunc*. On August 31, 2006, the trial court granted Miller leave to file a direct appeal *nunc pro tunc*, which Miller filed on October 3, 2006. Miller's counsel subsequently filed an application to withdraw pursuant to **Anders v. California**, 386 U.S. 738 (1967), and an accompanying **Anders** brief. Miller filed a motion to proceed

_____

[1] 18 Pa.C.S.A. §§ 901, 2502.

[2] 18 Pa.C.S.A. § 2702(a)(1).

[3] 18 Pa.C.S.A. § 6106.

on appeal *pro se*, which this Court denied as moot, explaining that Miller was automatically permitted to appeal *pro se* under **Anders**. On appeal, Miller contested the sufficiency of the evidence for his attempted murder conviction, as well as the trial court's **Kloiber**[4] instruction to the jury regarding T.W.'s and T.S.'s identification testimony. Ultimately, this Court affirmed Miller's judgment of sentence on October 31, 2008. **Commonwealth v. Miller**, 2635 EDA 2006 (Pa. Super. filed Oct. 31, 2008) (unpublished memorandum). On June 30, 2009, the Pennsylvania Supreme Court denied Miller's petition for allowance of appeal. **Commonwealth v. Miller**, 980 A.2d 110 (Pa. 2009) (Table).

Miller filed a second *pro se* PCRA petition on July 27, 2009, which was amended by appointed PCRA counsel on May 26, 2010. On July 15, 2011, the PCRA court denied Miller's petition. Miller appealed to this Court on August 15, 2011, and this Court affirmed the PCRA court's denial of Miller's petition on August 20, 2012. **Commonwealth v. Miller**, 2173 EDA 2011 (Pa. Super. filed Aug. 20, 2010) (unpublished memorandum).

On November 6, 2017, Miller filed a third *pro se* PCRA petition which he amended on October 4, 2018. On April 23, 2019, the PCRA court dismissed

---

[4] **See Commonwealth v. Kloiber**, 106 A.2d 820, 826-27 (Pa. 1954) (where witness had good opportunity for identification, is positive as to identity, and identification not weakened by prior failure to identify, testimony regarding identification need not be received with caution; conversely, where witness was not in position to clearly observe assailant, is not positive as to identity, or identification weakened by prior failure to identify, court "should warn the jury that the testimony as to identity must be received with caution").

Miller's amended petition as untimely. Miller timely filed a notice of appeal, and presently raises the following issues for our review:

I.      Whether [a] state court has the jurisdiction in the filing of second or subsequent PCRA petitions to enforce the right to effective assistance of PCRA counsel where initial collateral counsel's representation fell below the [standards of the] Pennsylvania Constitution and Pennsylvania statutes relating to their guarantee of effective representation that resulted in a miscarriage of justice, [in that counsel's ineffectiveness qualifies as] a timel[iness] exception [to the PCRA] that should apply to defaulted state claims[,] [and if not, whether this] violat[es] [Miller']s state and federal Constitutional right to due process?

II.     Whether [the failure of] [Miller]'s appellate counsel in an initial collateral proceeding[] to raise a claim of trial counsel's ineffectiveness [excuses any resulting] procedural default?

III.    Whether [Miller]'s trial counsel provided ineffective assistance of counsel by failing to object to a faulty **Kloiber** instruction, in violation of [the] Fourteenth Amendment right to due process clause.

Brief of Appellant, at 1-2 (unnecessary capitalization removed).

When reviewing the denial of PCRA relief, we must determine whether the ruling of the PCRA court is supported by the record and free of legal error. **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011). The scope of our review is limited to the findings of the PCRA court and the evidence of the record viewed in the light most favorable to the Commonwealth as the prevailing party. **Commonwealth v. Duffey**, 889 A.2d 56, 61 (Pa. 2005). We may affirm a PCRA court's decision on any grounds if supported by the record. **Commonwealth v. Burkett**, 5 A.3d 1260, 1267 (Pa. Super. 2010).

Before reaching the issues that Miller raises in his appellate brief, we must first ascertain whether the PCRA court correctly determined that the instant petition was untimely. **See Commonwealth v. Murray**, 753 A.2d 201, 203 (Pa. 2000) (PCRA time limit is jurisdictional; court may only review untimely petition if petitioner pleads and proves statutory exception).

Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment of sentence becomes final unless the petitioner alleges, and proves, an exception to the time for filing the petition, as set forth at 42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii).[5] A PCRA petition invoking one of these statutory exceptions must "be filed within 60 days of the date the claims could have

_____

[5] The exceptions to the timeliness requirement are:

(i) the failure to raise the claim previously was the result of interference of government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States.

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii).

been presented." *See Commonwealth v. Hernandez*, 79 A.3d 649, 651-52 (Pa. Super. 2013) (citations omitted); *see also* 42 Pa.C.S.A. § 9545(b)(2).[6]  Furthermore, the petitioner must establish that his claim is based upon issues that have not been either waived or previously litigated. *Commonwealth v. Banks*, 656 A.2d 467 (Pa. 1995).[7]

Here, Miller's judgment of sentence became final upon the expiration of the 90-day period following the Pennsylvania Supreme Court's denial of his petition for allowance of appeal on June 30, 2009, when the time for seeking discretionary review with the United States Supreme Court expired.  *See* U.S. Supreme Court Rule 13.[8]  Therefore, Miller had until September 28, 2009, to

---

[6] On October 24, 2018, the General Assembly amended subsection 9545(b)(2) to enlarge the time in which a petitioner may invoke a PCRA time-bar exception from 60 days to one year from the date the claim arises.  *See* Act 2018, Oct. 24, P.L. 894, No. 146, § 2, effective in 60 days [Dec. 24, 2018].  However, the amendment applies only to claims arising on December 24, 2017, or thereafter.  *Id.* at § 3.  In this case, Miller's claims arise from his trial counsel's failure in 2004 to object to specific jury instructions, and his PCRA counsel's failure in 2011 to raise claims of trial counsel's ineffectiveness for the same.  The amendment, therefore, does not apply here.

[7] An issue is deemed waived if "the petitioner could have raised it but failed to do so before trial, at trial . . .  on appeal or in a prior state post-conviction proceeding."  42 Pa.C.S.A. § 9544(b).  An issue is deemed finally litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue."  42 Pa.C.S.A. § 9544(a)(2).

[8] *See also* 42 Pa.C.S.A. § 9545(b)(3) (judgment is deemed final "at the conclusion of direct review . . . or at the expiration of time for seeking review."); *Commonwealth v. Feliciano*, 69 A.3d 1270, 1275 (judgment is deemed final ninety days after Pennsylvania Supreme Court denies petition for allowance of appeal, since defendants have ninety days to seek review with United States Supreme Court).

file a timely PCRA petition. The instant petition, filed over eight years later, is patently untimely. Accordingly, Miller must plead and prove that one of the statutory timeliness exceptions applies, and he must have filed the instant petition within sixty days of the date the claim could have been brought. 42 Pa.C.S.A. §§ 9545(b)(1)-(2).

Here, Miller argues that under *Martinez v. Ryan*, 566 U.S. 1 (2012), trial counsel's failure to object to the court's *Kloiber* instruction, coupled with PCRA counsel's failure to raise ineffectiveness claims for the same, constitutes an exception to the PCRA's timeliness requirement. Brief of Appellant, at 10-21. This claim fails.

> In *Martinez*, *supra*, the United States Supreme Court held that:
>
> [w]here, [as in Pennsylvania,] under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas corpus court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320 (unnecessary italics removed).

In other words, the *Martinez* Court held that, where counsel is ineffective in an initial state collateral review proceeding, and where that ineffectiveness caused the petitioner to procedurally default on a substantive claim, such ineffectiveness "may provide cause [to excuse] a procedural default in a federal habeas proceeding." *Id.* at 1315. The Supreme Court made clear that its ruling was "equitable" rather than "constitutional," and

that, accordingly, "state collateral cases on direct review from state courts are unaffected by the ruling in this case." ***Id.*** at 1320.

In ***Commonwealth v. Saunders***, 60 A.3d 162, 165 (Pa. Super. 2013), this Court addressed whether ***Martinez*** provides an exception to the PCRA's time-bar to allow defendants to raise PCRA counsel's ineffectiveness for waiving claims that could have been raised in an initial proceeding. ***Id.*** at 162. There, we recognized that "[w]hile ***Martinez*** represents a significant development in federal habeas corpus law, it is of no moment with respect to the way Pennsylvania courts apply the plain language of the time bar set forth in section 9545(b)(1) of the PCRA." ***Id.*** at 165. ***See also Commonwealth v. Holmes***, 79 A.3d 562 (Pa. 2013) ("As the [Supreme] Court made clear, ***Martinez*** did not recognize a new constitutional right that the [s]tates are obliged to accommodate in any specific fashion."); ***Commonwealth v. Wharton***, 886 A.2d 1120, 1127 (Pa. 2005) ("[A]llegations of ineffective assistance of counsel will not overcome the jurisdictional timeliness requirements of the PCRA."); ***Commonwealth v. Henkel***, 90 A.3d 16 (Pa. Super. 2014) (rejecting petitioner's argument that ***Martinez*** affects PCRA time-bar).

Miller has not attempted to plead and prove any other exception to the PCRA's time-bar.[9]  Accordingly, we conclude that Miller's petition is time-barred and that our "courts are without jurisdiction to offer [him] any form of relief." *Commonwealth v. Jackson*, 30 A.3d 516, 523 (Pa. Super. 2011). Therefore, we affirm the PCRA court's order dismissing Miller's serial PCRA petition as untimely.

Order affirmed.[10]

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/20

---

[9] To the extent Miller sought to argue instead that *Martinez* created a newly-recognized constitutional right that applies retroactively, it would not entitle him to relief.  The *Martinez* Court expressly stated that its ruling was not constitutional, and that it does not "provide defendants a freestanding constitutional claim to raise." *Martinez*, *supra* at 1319.

[10] As the PCRA court noted in its July 1, 2019 opinion, on March 11, 2019, the PCRA court erroneously sent its notice of intent to dismiss Miller's petition without a hearing, pursuant to Pa.R.Crim.P. 907, to State Correctional Institute (SCI) Albion rather than SCI Houtzdale where Miller was housed. PCRA Opinion, 7/1/19, at 3.  This notice failed to comply with Pa.R.Crim.P. 114, which provides that such notice shall be served by mail to the party's place of confinement.  *See* Pa.R.Crim.P. 114(B)(3)(v).  Miller was therefore denied an opportunity to respond.  Because Miller's serial petition is untimely, however, we conclude that remand is not necessary to correct this procedural error. *See Commonwealth v. Pursell*, 749 A.2d 911, 917 n.7 (Pa. 2000).